## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| EMILY DEHN | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| | **(Jury Demanded)** |
| THE KANSAS BOARD OF REGENTS FOR KANSAS COLLEGES AND UNIVERSITIES, STATE OF KANSAS *ex rel.* UNIVERSITY OF KANSAS MEDICAL CENTER AND UNIVERSITY OF KANSAS, | |
| Defendant. | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff EMILY DEHN ("Ms. Dehn"), by and through her undersigned attorney, and hereby complains and alleges against the above-named Defendants, based upon knowledge, information and a reasonable belief derived therefrom, as follows:

## INTRODUCTION

1.      Ms. Dehn seeks damages and injunctive relief to remedy violations of her rights secured by the Americans with Disabilities Act of 1990, as amended ("ADA"), and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), for retaliation and for breach of contract by the above-named defendants (collectively, "KU") in relation to wrongs she suffered while a student in the School of Nursing at the University of Kansas Medical Center ("KUMC").

2.      Ms. Dehn endured pervasive and arbitrary discriminatory treatment and retaliation while enrolled in the Nurse-Midwife Doctor of Nursing Practice ("DNP") program at KUMC after she disclosed her disability and sought reasonable accommodations.  KU repeatedly failed to

1

provide Ms. Dehn reasonable accommodations to which she was entitled, negatively impacting Ms. Dehn's ability to participate in the DNP program and academically perform.

3.     In October 2022, KU entered into a Settlement Agreement with Ms. Dehn after she threatened to file a discrimination and retaliation lawsuit against KU and DNP faculty members in 2022.  Per the terms of the settlement agreement, KU agreed to provide Ms. Dehn with reasonable accommodations for her disability and to award Ms. Dehn her degree upon completion of the DNP program in exchange for Ms. Dehn withdrawing her claims against KU.  Ms. Dehn experienced retaliation after the parties entered into the Settlement Agreement when KU took steps to delay Ms. Dehn from graduating from the DNP program for 2.5 years.  This included KU adding coursework for Ms. Dehn to complete by increasing the number of required credit hours.  KU also failed to obtain neutral graders to regrade assignments on which Ms. Dehn unfairly received failing grades prior to the Settlement Agreement.  In further retaliation, KU knew Ms. Dehn planned to move to Colorado, but prior to her move faculty never advised her that she could not do her clinical rotations in that state.

4.     Accordingly, Ms. Dehn now petitions this Court for redress in the form of injunctive relief, damages, costs and reasonable attorney's fees in relation to the violation of her rights, as well as damages for breach of contract pursuant to Kansas common law.

## PARTIES, JURISDICTION AND VENUE

5.     Plaintiff, EMILY DEHN, is a resident of Colorado.  At all times relevant herein, Ms. Dehn was a qualified student in good standing in the Program at KUMC in Kansas City, Kansas.

6.     Defendant, STATE OF KANSAS *ex rel.* UNIVERSITY OF KANSAS MEDICAL CENTER and UNIVERSITY OF KANSAS, has its principal place of business in Kansas.  THE

KANSAS BOARD OF REGENTS FOR KANSAS COLLEGES AND UNIVERSITIES (the "Board") supervises, manages, and controls the UNIVERSITY OF KANSAS MEDICAL CENTER and the UNIVERSITY OF KANSAS.  The Board establishes all general policies affecting public colleges and universities in Kansas, including KUMC, and prescribes rules and regulations as may bring these policies into effect.  The Board delegates executive power to the presidents of the institutions and their authorized administrators and retains approval power over decisions made thereto.  KUMC operates the Program in Kansas City, Kansas.

7.     At all times relevant hereto, and in all the actions described herein, Defendants' actions took place in the State of Kansas.

8.     KU did the acts and omissions hereinafter alleged in bad faith and with knowledge that its conduct violated well established and settled law.

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) because Ms. Dehn asserts claims arising under federal law and pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

10.    Supplemental jurisdiction over Ms. Dehn's pendant state law claims are proper pursuant to 28 U.S.C. § 1367(a), as there exist claims arising out of the same transaction and occurrence as her federal claims.

11.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), as Defendants are located in this District, have significant contacts to this District, and the primary events giving rise to Ms. Dehn's claims occurred therein.

12.    All conditions precedent to the maintenance of this suit and Ms. Dehn's claims have occurred, been performed, or otherwise waived.

## GENERAL FACTUAL ALLEGATIONS

### Overview

13.     KUMC offers a Nurse-Midwife Doctor of Nursing Practice program (the "Program").  Ms. Dehn entered the Program as a doctoral student in summer 2019.

14.     Ms. Dehn was initially attracted to the DNP program because KU represented it offered a three-year plan of study for a student to complete her Doctor of Nursing Practice degree in midwifery.

15.     Ms. Dehn applied to the DNP program with the three-year plan being important to that decision.

16.     Ms. Dehn suffers from the diagnosed disabilities Ulcerative Colitis and Spondyloarthritis.

17.     These impairments require Ms. Dehn not to travel more than 45 minutes from her home for schooling and clinical placements.

18.     Nonetheless, despite these disabilities, Ms. Dehn earned a Bachelor of Science in Nursing degree from William Jewell College after completing an accelerated program in 2019. Ms. Dehn also earned a Bachelor of Arts degree from the University of Missouri.

19.     As a result, Ms. Dehn met the demanding admission standards of the Nurse-Midwife Doctor of Nursing Practice Program at KU and was offered a space in the cohort beginning in the summer 2019.

### Ms. Dehn Plans to Graduate December 2022

20.     Ms. Stratton informed Ms. Dehn on April 30, 2019, that students who begin the DNP program in summer 2019 and wish to enroll in a full-time plan can expect to complete the

program within 4 years, possibly 3.5 years, if her DNP Research Project is completed a semester early.

21.     In July 2019, Ms. Dehn received a proposed Accelerated Plan of Study from Program Director Dr. Cara Busenhart stating Ms. Dehn's anticipated graduation date would be in December 2022 after she completed the courses NRSG 928 and NRSG 964 in the fall 2022 semester.

22.     In August 2019, Ms. Dehn chose the Accelerated Plan of Study to complete the DNP program by December 2022.

23.     In September 2019, Dr. Busenhart sent a personalized plan of study to Ms. Dehn documenting an anticipated December 2022 graduation date.

24.     In June 2020, Ms. Dehn received an acknowledgement from DNP faculty of her Accelerated Plan of Study, and she discussed participating in an independent study to gain RN experience in labor and delivery.  Dr. Busenhart stated that this would be adequate for Ms. Dehn gain necessary experience in labor and delivery.

25.     On November 17, 2021, Dr. Busenhart gave Ms. Dehn the option, via email, to graduate in December 2022 or May 2023.

26.     On November 22, 2021, Ms. Dehn discussed her plan to graduate in December 2022 with Dr. Busenhart and Dr. Krysta Ramirez Henry, Clinical Assistant Professor in the School of Nursing.

27.     In January 2022, Ms. Dehn confirmed with Dr. Busenhart her decision to graduate in December 2022.

28.     Ms. Dehn was on track to exceed the required 1,000 post-baccalaureate practice hours upon completion of courses NRSG 980, NRSG 927, and NRSG 928, all of which were slated

to be completed by the end of the fall 2022 term, meaning in turn that the number of NRSG 964 credits would necessarily be reduced, resulting in fewer required clinical hours for Ms. Dehn to complete as of fall 2022.

**Ms. Dehn's Accommodations for Her Disabilities**

29.     To obtain accommodations for their disabilities, KU students must submit documentation of their disability and information regarding needed accommodations to the Academic Achievement and Access Center, as well as meet with a special access specialist.

30.     In 2019, KU approved Ms. Dehn's accommodations request that she be granted flexible attendance and that she be permitted to take her exams in a separate room.

31.      In early 2022, KU granted Ms. Dehn an additional accommodation that her clinical placements be within 45 minutes of her home.

32.     On March 10, 2022, Dr. Busenhart released the clinical placement sites for DNP program students for the summer NRSG 927 Midwifery Childbearing Family course and the fall 2022 NRSG 928 course.

33.     For the summer term, Ms. Dehn was to be placed at either New Birth Company in Overland Park or at Bothwell Regional Health Center.  Bothwell Regional Health Center is a hospital in Sedalia, Missouri, which is 1 hour and 45 minutes away from KU and a similar distance from Ms. Dehn's home.

34.     Overland Park was a shorter commute for Ms. Dehn within 45 minutes, and she hoped to be placed there for clinical placement.

35.     By April 2022, it became clear that Overland Park was not going to accept any KU students that semester for clinical placement.

36.     Ms. Dehn requested to remain at her then-current clinical site at Providence Medical Center in the Kansas City area.  Dr. Busenhart denied this request and instead insisted that Ms. Dehn be placed in Sedalia despite KU having previously granted Ms. Dehn the accommodation that her clinical placements be within 45 minutes of her home.

37.     Ms. Dehn requested a meeting with Dr. Busenhart, which was scheduled for April 8, 2022.  Dr. Busenhart invited two additional Program personnel to the meeting, which made Ms. Dehn feel uncomfortable discussing her personal and private health concerns.

38.     At the April 8, 2022, meeting, Ms. Dehn raised her concern about traveling such a long distance to Sedalia for her placement.  Dr. Busenhart stated that Ms. Dehn could find a preceptor on her own for clinical placement due to the adversity she faced with the long drive to Sedalia.

39.     After the meeting, Ms. Dehn followed Dr. Busenhart's advice and tried to find a preceptor.  Dr. Busenhart harshly criticized Ms. Dehn for attempting to find a preceptor on her own, going so far as to threaten to write up Ms. Dehn for misconduct and fail her in a course for professionalism violations.  This was despite Dr. Busenhart recently telling Ms. Dehn she could contact potential preceptors on her own.

40.     On April 26, 2022, Ms. Dehn met with Cyndie Majher, Interim Assistant Dean of Student Affairs and Enrollment Management for KU, to discuss Dr. Busenhart's threats to fail Ms. Dehn's coursework and delay her graduation.

41.     In late April 2022, Ms. Dehn contacted Cyn Ukoko, KU's Senior Coordinator for Academic Accommodations, and discussed with Ms. Ukoko a complaint against Dr. Busenhart with respect to this clinical placement issue and how it violated her accommodation for her disability.

42.     Cyn Ukoko recommended Ms. Dehn discuss her concerns about Dr. Busenhart's threats and bullying with Dr. Mike Werle, Dean of Postdoctoral Affairs and Graduate Studies, and Dorris Mbogo, the Director of the Equal Opportunity and Academic Compliance office.

43.     Ms. Dehn contacted Dr. Sally Maliski, Dean of the School of Nursing, regarding concerns about her disability accommodations and graduation delays.

44.     On May 27, 2022, Dr. Busenhart emailed Ms. Dehn that she would either be required to drop her disability accommodations or her graduation would be delayed from December 2022 to May 2023.

45.     Ms. Dehn submitted a letter from her treating rheumatologist, Dr. Kalista Engelman, to Ms. Ukoko and KU that stated Dr. Engelman recommended Ms. Dehn stay closer to Kansas City for her clinicals due to her disability making travel difficult.  Ms. Dehn needed to be close to her doctors should she require medical assistance, such as intravenous infusions.  Ms. Dehn requested this accommodation for her disability through appropriate channels at KU at that time.

46.     An interactive process with Ms. Ukoko took place after Ms. Dehn filed her complaint, during which a clinical placement site closer than Sedalia was discussed and researched in late April through late May 2022.  Ms. Dehn requested a placement within 45 minutes of her home as an accommodation, which was in accordance with her physician's recommendation.

47.     Dr. Busenhart prevented Ms. Dehn from receiving this accommodation, despite Ms. Ukoko working diligently to try to provide Ms. Dehn with a closer clinical placement.

48.     In June 2022, and after numerous conversations regarding Ms. Dehn's accommodation request, Ms. Dehn was finally offered a clinical placement for summer 2022 in St. Joseph, Missouri, which is 48 minutes from her home.

49.     Ms. Dehn compromised, cooperated, and in good faith accepted this proposal despite the St. Joseph placement being further than 45 minutes away.  Ms. Dehn began her NRSG 927 course clinical hours in St. Joseph, Missouri during the summer 2022 term.

**Ms. Dehn's Graduation is Delayed**

50.     On May 10, 2022, Ms. Dehn emailed Ms. Stratton to ask for a graduation check, wherein Ms. Dehn reiterated she planned on graduating in December 2022.  Ms. Stratton stated she reviewed Ms. Dehn's student record, and she was on track to finish her degree requirements to graduate in May 2023.

51.     According to Ms. Stratton, Ms. Dehn would not be graduating at the conclusion of the fall 2022 term as planned and documented in her plan of study prepared by the DNP program.

52.     Ms. Dehn's graduation was delayed due to her not being permitted to take two final courses in the DNP program's curriculum (NRSG 928 "Nurse-Midwifery Integration Practicum" and NRSG 964 "Advanced Clinical Residency") together during the fall 2022 term.

53.     Ms. Dehn was required to take the NRSG 964 course in spring 2023, delaying her graduation until the end of that term.  This contradicted Ms. Dehn's personalized plan of study for her to graduate in December 2022 that has been in place for years.

54.     The DNP Student Manual and the NRSG 964 course description states that the "Prerequisites" for enrollment in the course are "final practicum course or consent of instructor." Neither the DNP Student Manual nor the Program Student Manual provide that NRSG 928 "Nurse-Midwifery Integration Practicum" is a prerequisite for NRSG 964.

55.     The timing of this decision by the DNP program right after Ms. Dehn disputed the Program's initial denial of her accommodation was evidence of retaliation for her exercising her rights under the ADA to receive necessary accommodations due to her disability.

56.     When Ms. Dehn disputed this alleged course prerequisite to NRSG 964 and stated to Ms. Stratton that she should be on track to graduate in December 2022 pursuant to her plan of study, Ms. Dehn did not receive a response.

57.     Dr. Busenhart previously made a personalized plan of study for Ms. Dehn, which provided she only had three courses left to complete before graduating.  The courses that Ms. Dehn still needed to complete for her to earn her doctorate degree were as follows: NRSG 928 Nurse-Midwifery Integration Practicum (4 credit hours), NRSG 980 DNP Project (only 1 more credit hour is needed), and NRSG 964 Advanced Clinical Residency (2 credit hours).

58.     Ms. Dehn's plan of study states that 1,000 post-baccalaureate practice hours are necessary for her doctorate degree.  The number of credit hours for NRSG 964 Advanced Clinical Residency is determined by the need to meet this 1,000-credit hour requirement.  All of the practicum courses (NRSG 925: 2 credit hours, NRSG 926: 2 credit hours, NRSG 927: 3 credit hours, NRSG 928: 4 credit hours) and DNP project hours (NRSG 980: which will be 8 credit hours in total) count towards the 1,000-hour requirement.  One credit hour is equivalent to 64 practice hours, according to the University Student Handbook and the NRSG 964 Advanced Clinical Residency-Course Instructions.

59.     The DNP Student Manual verifies that the DNP project credit hours also count as practice hours, as follows:

> [A]ll DNP graduates must complete a minimum of 1,000 hours of post-BSN practice as part of a supervised academic program. In the KU SON DNP program, 384 hours of practice are awarded to all students for completion

of NRSG 980 DNP Project. The remaining practice hours are completed in specialty practicum courses.

**Ms. Dehn's DNP Project is Delayed**

60.     When Ms. Dehn began work on her DNP project in the spring 2022, it was to be a three-semester project.  KU recently has prolonged her DNP project to five semesters.

61.     Dr. Busenhart originally was part of Ms. Dehn's DNP project committee because it was required that a member of the appropriate department be included in the project.  Dr. JoAnn Peterson, the Project Committee Chair, told Ms. Dehn that her project was good enough to publish.

62.     In order to pass certain portions of the DNP project, each committee member must agree that the project is ready to move to the next step.  Aside from Dr. Busenhart, project committee members JoAnn Peterson and Lucinda Whitney agreed that Ms. Dehn was ready to move forward.  Dr. Busenhart delayed a crucial component of Ms. Dehn's project presentation phase.  This took place shortly after Ms. Dehn was told by other faculty members that she should publish her work.

63.     After Dr. Busenhart delayed Ms. Dehn's presentation, it became clear this was yet another form of retaliation by KU.  Dr. Busenhart was removed from Ms. Dehn's DNP project as a result.

64.     This delay by Dr. Busenhart pushed Ms. Dehn's project back, adding an additional semester of NRSG 964 for Ms. Dehn to be able to complete her project.

65.     Ms. Dehn was thereafter told that she needs to have a member of the midwifery department approve her final presentation, which will take place when she takes the final semester of the course.

66.     Ms. Dehn was told in her May 3, 2023, meeting with Dawn Shew that it was not possible to finish the DNP project courses until her final semester in the program. In other words,

the final semester of NRSG 980 must be completed along with the final semester in the program. This added yet another semester of the project for Ms. Dehn. This information had not ever been discussed before with Ms. Dehn and it was another "rule" KU created to delay her graduation, adding additional work for Ms. Dehn to complete and tuition expenses.

67.     Ms. Dehn fears, as evidence from previous actions, that Dr. Busenhart and/or the DNP department will use her DNP project to further retaliate against her and delay her graduation.

68.     As a result of the cumulative actions by KU and DNP faculty, Ms. Dehn has suffered and she continues to suffer tremendous physical, mental, and emotional damages, and her career has been significantly delayed by 2.5 years as of the time of this filing due to KU's wrongful acts.

**Ms. Dehn Receives Failing Grades**

69.     In May 2022, Ms. Dehn filed a discrimination complaint against Dr. Busenhart with KU's Equal Opportunity and Academic Compliance office.  During this time period, Ms. Dehn met with Ms. Mbogo and Natalie Holick, Associate Vice Chancellor of Integrity and Compliance/Chief Compliance Officer, multiple times to discuss ongoing concerns about Dr. Busenhart's threats and Ms. Dehn's accommodations.

70.     KU did not move forward with a formal investigation of Ms. Dehn's complaint because her accommodation request for her clinical placement had been granted when she accepted placement in St. Joseph.

71.     On June 13, 2022, Ms. Dehn met with Ms. Majher to discuss concerns about Dr. Busenhart's threat to delay her graduation. Ms. Majher confirmed that Ms. Dehn's graduation was being delayed from December 2022 to May 2023.

72.     On June 17, 2022, Ms. Dehn met with Dr. Cynthia Teel, Associate Dean for the School of Nursing and Academic Affairs, to discuss concerns about her graduation being delayed. Dr. Teel confirmed Ms. Dehn's graduation was being delayed.

73.     On June 20, 2022, Ms. Dehn met with Dr. Werle via Zoom to discuss her graduation officially being delayed. Dr. Werle warned Ms. Dehn that he had seen the department retaliate against students before by either delaying their graduation or failing their coursework. Dr. Werle advised Ms. Dehn to "watch your back from now on".

74.     In July 2022, KU's retaliation and discrimination became even more prevalent when Ms. Dehn received failing grades on nearly every assignment in NRSG 927, the class in which the accommodations dispute was prominent, despite excelling on nearly identical assignments the previous semester.

75.     KU faculty, Dr. Henry and Dr. Christy Evers, a member of the KUMC midwifery department, encouraged Ms. Dehn to withdraw from her NRSG 927 course due to alleged poor academic performance.  This was despite Ms. Dehn being praised just two weeks prior by another faculty member who stated she would be ready to graduate in December 2022.

76.     Ms. Dehn never previously received a failing grade on any class or assignment.

77.     Dr. Henry and Dr. Evers added additional assignments for Ms. Dehn to complete during the NRSG 927 course.  These assignments were not required of other students, but Ms. Dehn was told they were necessary for her to complete in order to continue in the NRSG 927 course.

78.     On July 27, 2022, Dr. Henry informed Ms. Dehn she failed NRSG 927 and that she could not attend clinical rotations.

79.     On August 4, 2022, Ms. Dehn received an evaluation of her clinical performance for summer 2022 wherein her preceptor for NRSG 927, Bridget Robinson, stated she in no way felt Ms. Dehn was failing her clinical rotation, despite Dr. Henry accusing Ms. Dehn of failing.

80.     On August 30, 2022, Ms. Dehn threatened to file a disability discrimination and retaliation complaint against KU in the United States District Court in the District of Kansas. Specifically, this lawsuit included claims for violation of Title II of the ADA, violation of substantive due process pursuant to 42 USC § 1983, breach of contract, and civil conspiracy.

**Ms. Dehn and KU Enter into a Settlement Agreement**

81.     In October 2022, Ms. Dehn and KU entered into a settlement agreement to resolve her claims at that time.  Ms. Dehn and Dr. Maliski both signed the Settlement Agreement.

82.     The Settlement Agreement's terms provide that a mutually-agreed upon neutral grader would review Ms. Dehn's written assignments and assign grades for her individual assignments and overall grades for such work.

83.     The Settlement Agreement further provides that KU will award Ms. Dehn her Doctor of Nursing Practice degree upon successful completion of all DNP program curricular requirements.

84.     Despite Ms. Dehn surpassing the 1,000 post-baccalaureate practice hours requirement, KU faculty insists she take two credit hours of NRSG 964, even though this has not been a requirement for other students.

85.     The Settlement Agreement further provides that Ms. Dehn's clinical placement would be in accordance with her approved disability accommodation, which includes placement at a clinical site within 45 minutes of her home.

86. Since entering into the Settlement Agreement, KU has continued to take discriminatory and retaliatory actions that have resulted in further delaying Ms. Dehn's graduation from the DNP program.  This includes KU and DNP faculty unreasonably adding coursework for Ms. Dehn to complete in order for her to graduate.

87. Ms. Dehn has completed NRSG 925 (2 credit hours/128 clinical hours), NRSG 926 (2 credit hours/128 clinical hours), NRSG 927 which is the course she was inaccurately failed in (3 credit hours/192 clinical hours), and 7 out of 8 hours she needs of NRSG 980 (7 credit hours/448 clinical hours).  Ms. Dehn already has completed 896 clinical hours.  With the exclusion of the course KU inaccurately failed her in, Ms. Dehn has completed 704 clinical hours.  She still must take NRSG 928 (4 credit hours/256 clinical hours) and 1 more credit hour of NRSG 980 (64 credit hours).  It is presumed she will be required to retake NRSG 927 (3 credit hours/192 clinical hours).  Therefore, Ms. Dehn still has an additional 320 clinical hours to complete in order to graduate based on KU's changed requirements.

88. By the time Ms. Dehn finishes her remaining required classes and only one round of NRSG 927 clinical hours, she will have a total of 1216 clinical hours.  By KU's own rules written in the handbook and manual referenced above, Ms. Dehn should not be required to take NRSG 964 Advanced Clinical Residency because she doing so will cause her to surpass the necessary 1,000 post-baccalaureate practice hours that are required for her doctorate degree. She will clearly meet the 1,000-hour requirement without taking NRSG 964.

89. In fall 2022, Ms. Dehn's Kansas counsel, Andrew Duncan, informed KU about Ms. Dehn's plans to move to Colorado from Missouri at the beginning of the year in 2023.

90. In December 2022, the neutral grader selected by KU gave Ms. Dehn failing grades on her coursework that she was tasked to regrade.

91.     The alleged neutral grader chosen by KU to grade Ms. Dehn's assignments per the terms of the Settlement Agreement, Amy Giles from Baylor University, colluded with DNP faculty not to change Ms. Dehn's previously failing grades on assignments. This is despite Ms. Dehn complying with all requirements for those assignments in order to pass and Ms. Dehn previously passing nearly identical assignments in the previous semester.

92.     Ms. Dehn identified over 130 mistakes, over nine assignments, made by Ms. Giles when grading Ms. Dehn's assignments. Ms. Giles also belongs to the same professional organizations as KU faculty members, leading to the reasonable conclusion that she is not neutral as required by the Settlement Agreement.

93.     Additionally, KU never allowed Ms. Dehn to compare the assignments she received failing grades on to other students' assignments.

94.     KU also prohibited Ms. Dehn from reviewing any communications between KU faculty and any neutral grader to determine whether the graders are truly unbiased.

**Ms. Dehn Moves to Colorado**

95.     In February 2023, Ms. Dehn changed her address on file with KU from her Kansas City, Missouri address to her Windsor, Colorado address, shortly after she moved.

96.     In April 2023, Dawn Shew, Assistant Dean of Student Affairs and Enrollment Management, notified Ms. Dehn that it was not possible for her to complete her clinical rotations in Colorado due to state boards of nursing requirements.

97.     KU did not inform Ms. Dehn until after her move that clinical rotations could not be completed in Colorado.

98.    On May 2, 2023, Ms. Dehn met with Ms. Shew regarding her clinical rotations wherein Ms. Shew acted as though KU was not aware Ms. Dehn intended to move to Colorado until April 2023.

99.    Cynthia Teel, Associate Dean, was copied on email correspondence sent by Ms. Dehn to Ms. Shew in April and May 2023 regarding this issue of Ms. Dehn completing her clinical rotations in Colorado and not receiving notice prior to her move that rotations could not be completed in that state.

100.    KU's failure to notify Ms. Dehn about this critical information before her move created another barrier for Ms. Dehn to overcome to graduate.

101.    KU has not taken any steps to try to accommodate Ms. Dehn by providing her with the ability to complete her clinical rotations in Colorado.

102.    Ms. Dehn spoke with representatives at each board of nursing from Kansas and Colorado, and representatives from both boards stated there are no restrictions regarding her completing clinical rotations in Colorado as represented by Ms. Shew.

103.    KU placed the burden on Ms. Dehn to find her own preceptor for clinical rotations despite other students being afforded one with assistance from the DNP program.  This conflicted with DNP faculty previously threatening to remove Ms. Dehn from the DNP program for unprofessionalism if she found her own preceptor.

104.    KU gave Ms. Dehn until May 17, 2023, only a few weeks, to find a preceptor in Wyoming or Nebraska for her summer course, which she could not meet given the limited amount of time provided.

105.    DNP faculty ignored Ms. Dehn's emails wherein she requested assistance in finding a preceptor.

106.     Ms. Dehn's inability to find a preceptor further delayed her graduation from the DNP program.

107.     On May 19, 2023, KU informed Ms. Dehn that her graduation was being delayed further and her course hours altered, by adding an additional credit hour of NRSG 964, despite the Settlement Agreement stating Ms. Dehn would only be required to take 1 credit hour of NRSG 964.  Dr. Teel stated Ms. Dehn's new graduation date would be May 2025.

## COUNT I

### VIOLATIONS OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12182, et seq. and SECTION 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 701, et seq. (DISABILITY DISCRIMINATION, INCLUDING FAILURE TO ACCOMMODATE)

108.     Each of the allegations set forth in paragraphs 1 through 107, inclusive, are hereby incorporated by this reference as if realleged fully herein.

109.     Title II of the ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  Section 504 provides, "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...."  29 U.S.C. § 794(a). Because the language of these two provisions is substantially similar, claims under both acts are generally analyzed together.

110.     Title II of the ADA and Section 504 require governed entities to make reasonable modifications and accommodations unless such accommodations or modifications would

fundamentally alter the nature of the services, privileges, advantages or accommodations provided by the entity.

111.    KUMC is subject to the mandate of the ADA as an institution of public accommodation and receives federal financial assistance ("FFA"), as defined by 29 U.S.C. § 794, including through its participation in and receipt of federal student aid funds, and, as such, may not discriminate against a person because of her disabilities.

112.    Under these mandates, KU has an affirmative obligation to take steps to ensure that appropriate modifications and accommodations are made and implemented in a manner so as to provide students with equal access to its programs, including courses and grading, and to ensure that student evaluation is conducted in a non-discriminatory manner.

113.    Ms. Dehn is a "qualified individual with a disability."  Ms. Dehn suffers from Ulcerative Colitis and Spondyloarthritis, which are qualifying disabilities.  As such, Ms. Dehn's conditions, when active, substantially limit major life activities and require Ms. Dehn to remain in relatively close proximity to her physicians should she require medical assistance, such as intravenous infusions.

114.    Notwithstanding her conditions, Ms. Dehn is able to safely participate in all activities required by the Program provided she receives reasonable and necessary accommodations, including but not limited to remaining close to the Kansas City area for clinical rotations to ensure prompt access to her doctors when needed.

115.    Faculty at KUMC are responsible for implementing student accommodations and ensuring that a student in their course is not penalized or otherwise disadvantaged in evaluation or participation in the course for a disability or the use of an accommodation.

116.    KUMC faculty have authority to modify their evaluation criteria to take into account the impact of a necessary accommodation on a student, such as the limited ability to travel due to her disability thereby necessitating clinical placement in close proximity to a student's home.

117.    KUMC, and specifically the faculty of the DNP program, were aware of Ms. Dehn's disabilities and her disability-related symptoms and need for accommodations to be placed in clinical placements not that do not require travel time over 45 minutes from Ms. Dehn's home.

118.    Such modifications are reasonable accommodations and modifications.

119.    KU discriminated against Ms. Dehn on the basis of her disability, including by denying her reasonable accommodations and modifications in instances including, but not limited to:

a)      DNP program faculty denying Ms. Dehn's requested reasonable accommodations that her clinical rotations be within 45 minutes from her home after she moved to Colorado.

b)      DNP program faculty failing to provide Ms. Dehn with reasonable accommodations approved by KU in 2022.

c)      Subjecting Ms. Dehn to hostility, negative treatment, harsher judgment and grading, and unreasonable graduation requirements as compared to other students in the Program all as a result of her requesting, making use of, or noting her need for accommodations.

d)      Subjecting Ms. Dehn to hostility, negative treatment, and harsher judgment and grading, and unreasonable graduation unreasonable requirements as compared

to other students in the Program on the basis of her disability, related symptoms, and/or related need for accommodations and modifications.

e)      DNP program faculty and administration refusing to permit Ms. Dehn to complete clinical rotations in Colorado after DNP faculty were aware she planned to move there and misrepresenting to her that she would be able to participate in clinical rotations in Colorado.

120.    Dawn Shew, Assistant Dean of Student Affairs and Enrollment Management, is an official at KU who had authority to address the disability discrimination Ms. Dehn experienced and to institute corrective measures on KU's behalf.

121.    Ms. Shew had actual knowledge of this discrimination by KU faculty towards Ms. Dehn wherein she was aware that DNP program faculty denied Ms. Dehn's requested reasonable accommodations that her clinical rotations be within 45 minutes from her home after she moved to Colorado.  Ms. Shew also had notice that DNP program faculty and administration refused to permit Ms. Dehn to complete clinical rotations in Colorado after DNP faculty were aware she planned to move there and misrepresented to her that she would be able to participate in clinical rotations in Colorado.

122.    Ms. Shew failed to adequately respond when she knew about this discrimination by KU faculty towards Ms. Dehn wherein Ms. Shew took no action to remedy the discrimination.

123.    Cynthia Teel, Associate Dean, is an official at KU who had authority to address the disability discrimination Ms. Dehn experienced and to institute corrective measures on KU's behalf.

124.    Dr. Teel had actual knowledge of this discrimination by KU faculty towards Ms. Dehn wherein she was aware that DNP program faculty denied Ms. Dehn's requested reasonable

accommodations that her clinical rotations be within 45 minutes from her home after she moved to Colorado.  Dr. Teel also had notice that DNP program faculty and administration refused to permit Ms. Dehn to complete clinical rotations in Colorado after DNP faculty were aware she planned to move there and misrepresented to her that she would be able to participate in clinical rotations in Colorado.

125.    Further, Dr. Teel had notice in May 2023 that KU informed Ms. Dehn that her graduation was being delayed further and her course hours altered, by adding an additional credit hour of NRSG 964, despite the Settlement Agreement stating Ms. Dehn would only be required to take 1 credit hour of NRSG 964.  Dr. Teel confirmed her notice of this discriminatory action when she stated Ms. Dehn's new graduation date would be May 2025.

126.    Dr. Teel failed to adequately respond when she knew about this discrimination by KU faculty towards Ms. Dehn wherein Dr. Teel took no action to remedy the discrimination.

127.    KU's discriminatory actions were taken solely because of Ms. Dehn's disabilities, including her disability-related symptoms and need for and use of accommodations.

128.    KU wrongly discriminated against Ms. Dehn, all in violation of her rights pursuant to the ADA and Section 504, inflicting mental and emotional distress, and resulting in mental and physical post-traumatic distress and causing further damage to her health, well-being, academic and professional careers, because she is disabled.

129.    As a result of KU's discrimination against her, Ms. Dehn incurred substantial additional costs and damages due to the continual delay in her graduation, receipt of her doctoral degree and the ability to embark upon her chosen career.

130.    As a direct and proximate result of the unlawful discrimination against Ms. Dehn in violation of the ADA and Section 504 by KU, Ms. Dehn has suffered and continues to suffer

damages academically, financially, and emotionally in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

131.    It has been necessary for Ms. Dehn to obtain the services of an attorney to prosecute this action, and Ms. Dehn is entitled to an award of attorney's fees and costs of suit incurred herein.

132.    Ms. Dehn is entitled to injunctive and declaratory relief to complete her Program and graduate with her doctoral degree free from discrimination, and for an order forbidding KU from further perpetuating negative acts against her professionally, personally and academically, and from committing any other acts of discrimination.

## COUNT II

### *VIOLATIONS OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12182, et seq. and SECTION 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 701, et seq.*

### *(RETALIATION)*

133.    Each of the allegations set forth in paragraphs 1 through 132, inclusive, are hereby incorporated by this reference as if realleged fully herein.

134.    The ADA's retaliation statute provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). The standard for retaliation claims under Section 504 is the same as the standard for retaliation claims under the ADA.

135.    Ms. Dehn engaged in protected activity; including, but not limited to, notifying KUMC and the DNP program faculty of her disabilities, requesting and giving notice to KUMC of her need for accommodations and modifications, making use of her accommodations and

modifications, advocating for her right to accommodations, including having clinical placements that are within 45 minutes from her home, and filing a discrimination action against KU.

136.    Defendants subjected Ms. Dehn to several adverse actions directly related to her requests for, need for, and use of accommodations and modifications and her advocacy for her rights, including but not limited to:

a)    DNP program faculty continually deriding Ms. Dehn's commitment and ability to complete the Program and graduate, after she requested accommodations and/or discussed her need for or denial of those accommodations.

b)    DNP program faculty continually deriding Ms. Dehn's commitment and ability to complete the Program and graduate, after she filed a discrimination action against KU and DNP faculty in 2022 and the parties entered into a Settlement Agreement to resolve Ms. Dehn's claims.

c)    DNP program faculty denying Ms. Dehn's request for reasonable accommodations including her clinical placement to be within 45 minutes from her home after she moved to Colorado.

d)    KU and DNP program faculty failing to advise Ms. Dehn that she would not be able to complete her clinical rotations in Colorado when KU and DNP program faculty were aware that Ms. Dehn intended to move to that state.

e)    KU and DNP program faculty further delaying Ms. Dehn's graduation from the Program, by a total of 2.5 years as of the time of this filing, by unreasonably changing the coursework requirement and adding additional required credit hours for Ms. Dehn to graduate.

f)      KU failing to select an unbiased, neutral grader to review and regrade Ms. Dehn's assignments on which she inaccurately received failing grades prior to the parties' entry into the Settlement Agreement.

g)      KU refusing to provide Ms. Dehn with access to the communications between DNP program faculty and the neutral grader KU selected to regrade Ms. Dehn's assignments pursuant to the terms of the Settlement Agreement.

137.    There is a direct a causal connection between Ms. Dehn's protected activity of filing a discrimination complaint against KU, and KU's failure to provide accommodations and her mistreatment, given that the events happened closely together and the mistreatment, refusals to comply with the terms of the Settlement Agreement, additional refusals to assist her and harsh treatment happened in response to the Settlement Agreement entered into by and between the parties.

138.    KU wrongly retaliated against Ms. Dehn subsequent to the parties entering into the Settlement Agreement, all in violation of her rights pursuant to the ADA and Section 504, inflicting mental and emotional distress, and resulting in mental and physical post-traumatic distress and causing further damage to her health, well-being, academic and professional careers, because she is disabled.

139.    As a direct and proximate result of the unlawful retaliation against Ms. Dehn in violation of the ADA and Section 504 by KU, Ms. Dehn has suffered and continues to suffer damages academically, financially, and emotionally in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

140.    It has been necessary for Ms. Dehn to obtain the services of an attorney to prosecute this action, and Ms. Dehn is entitled to an award of attorney's fees and costs of suit incurred herein.

141.     Ms. Dehn is entitled to injunctive and declaratory relief to complete her Program and graduate with her doctoral degree free from discrimination, and for an order forbidding KU from further perpetuating negative acts against her professionally, personally and academically, and from committing any other acts of discrimination.

## COUNT III

### *BREACH OF CONTRACT – BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING*

142.     Each of the allegations set forth in paragraphs 1 through 141, inclusive, are hereby incorporated by this reference as if realleged fully herein.

143.     Kansas law imposes a contract on the relationship between students and universities, and the materials actually provided to students may become part of the agreement.

144.     Kansas law implies a covenant of good faith and fair dealing in all contracts entered into in the State of Kansas.

145.     Ms. Dehn has an express and implied contract with KU in connection with the rights explicitly guaranteed by the KU Student Handbook, DNP program policies and other material provided by KU to students.  These rights specifically applied and were intended to apply during the course of Ms. Dehn's enrollment in the Program at KUMC.

146.     Ms. Dehn complied with the mandates of the contractual materials governing her relationship with KU.

147.     KU has policies expressly prohibiting retaliation against a student who files a formal complaint or discrimination report.  KU Public Policies and Procedures explicitly state:

> No person may intimidate, threaten, coerce, or discriminate against any individual because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing. Disciplinary action, harassment, unsupported evaluations, or other adverse changes in the conditions of

employment or the educational environment may also constitute retaliation. Retaliation will not be tolerated . . . .

148.    KU breached its express contractual obligations to Ms. Dehn when it discriminated and retaliated against her by failing to provide reasonable accommodations, failing to accurately inform the faculty of the accommodations for which she was approved, and ensuring that such accommodations were provided as required by the policy; subjecting her to negative and unequal treatment, including delaying her graduation by 2.5 years as of the date of this filing; by unreasonably changing the course requirements to complete the Program; penalizing her for requesting, seeking, utilizing, or discussing her need for accommodations and for filing discrimination claims against KU and DNP program faculty.

149.    Ms. Dehn also has an express contract with KU pursuant to the Settlement Agreement entered into by and between the parties in October 2022 to resolve Ms. Dehn's claims at that time.

150.    The October 2022 Settlement Agreement required KU to award Ms. Dehn her degree upon completion of the Program in exchange for Ms. Dehn withdrawing her claims against KU up to that point in time.

151.    KU breached its contractual obligations to Ms. Dehn pursuant to the terms of the October 2022 Settlement Agreement by taking steps to prevent Ms. Dehn from fulfilling the DNP program requirements to graduate – effectively moving the goalposts subsequent to the Settlement Agreement.  This includes KU adding required coursework for Ms. Dehn to complete the DNP program and withholding information about Ms. Dehn's inability to fulfill her clinical requirements in Colorado prior to her moving there.

152.    Ms. Dehn justifiably expected to receive certain benefits consistent with the agreements she entered into with KU upon her enrollment in the Program at KUMC, including equal treatment on the basis of disability.

153.    Ms. Dehn adjusted her academic and personal decisions and behavior in relation to KU's contractual promises to provide her with a non-discriminatory, non-retaliatory, and non-hostile environment on the basis of her medical disabilities.

154.    Ms. Dehn performed her contractual obligations by fulfilling the obligations expected of any other student in the Program at KUMC and also performed her contractual obligations under the October 2022 Settlement Agreement.

155.    KU breached the covenant of good faith and fair dealing by discriminating and retaliating against Ms. Dehn repeatedly, as set forth in the general factual allegations.  KU's bad faith motivation for breaching the contracts was deliberate and was in conjunction with KU's ire at Ms. Dehn's threat to file a discrimination lawsuit against KU.

156.    It has been necessary for Ms. Dehn to obtain the services of an attorney to prosecute this action, and Ms. Dehn is entitled to an award of attorney's fees and costs of suit incurred herein.

157.    Ms. Dehn is entitled to injunctive and declaratory relief to complete her Program and graduate with her doctoral degree free from discrimination, and for an order forbidding KU from further perpetuating negative acts against her professionally, personally and academically, and from committing any other acts of discrimination.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff prays for relief that this Honorable Court enter judgment in her favor, and against Defendants, as follows:

1.      For general and compensatory damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) to be determined at trial;

2.      For injunctive and declaratory relief described herein, as the Court deems appropriate;

3.      For pre-judgment and post-judgment interest, as provided by law;

4.      For the costs and disbursements of this action, including experts, and attorneys' fees, pursuant to 42 U.S.C. § 1988; and

5.      Such other and further legal and equitable relief as the Court deems necessary, just and proper.

### DEMAND FOR JURY TRIAL

Ms. Dehn hereby demands a jury trial on all causes of action and claims with respect to which she has a right to jury trial.

### DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas, as the place of trial for this matter.

Dated this 7th day of March, 2024.

Respectfully Submitted,

**BROWN & CURRY, LLC**

/s/ Dan Curry
Dan Curry, KS #22750
Brown & Curry, LLC
1600 Genessee, Suite 956
Kansas City, MO 64102
(816) 756-5458
(816) 666-9596 (FAX)
dan@brownandcurry.com

*/s/ Sarah A. Brown*

Sarah A. Brown KS #12130
1600 Genessee St., Suite 956
Kansas City, MO 64102
Telephone: (816) 756-5458
Facsimile: (816) 666-9596
sarah@brownandcurry.com

and


**THE BACH LAW FIRM, LLC**

Jason J. Bach
*Pro Hac Vice Admission Pending*
7881 W. Charleston Blvd., Suite 165
Las Vegas, NV 89117
Telephone: (702) 925-8787
Facsimile: (702) 925-8788
JBach@bachlawfirm.com
*Attorney for Plaintiff Emily Dehn*