IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**EMILY DEHN,**

                           **Plaintiff**,

v.

**BOARD OF REGENTS FOR KANSAS COLLEGES AND UNIVERSITIES, STATE OF KANSAS *ex rel.* UNIVERSITY OF KANSAS**,

                           **Defendant**.

Case No. 24-2079-DDC-GEB

## MEMORANDUM AND ORDER

Plaintiff Emily Dehn filed suit against defendant Board of Regents for Kansas Colleges and Universities *ex rel.* University of Kansas.[1] Two claims remain in this case: one alleging unlawful disability discrimination under the Americans with Disabilities Act (ADA)[2] and § 504 of the Rehabilitation Act of 1973 and one alleging unlawful retaliation under the same statutes. Defendant now has filed a Motion for Judgment on the Pleadings (Doc. 35). Defendant's motion

---

[1] Defendant has clarified that the University of Kansas Medical Center—listed as a defendant in the Complaint—is not itself a legal entity. Doc. 12 at 5 n.1; Doc. 36 at 1 n.1. It "is simply a campus of the University of Kansas." Doc. 36 at 1 n.1. Plaintiff never contests this proposition. The court directs the Clerk to update the docket to list "Board of Regents for Kansas Colleges and Universities, State of Kansas *ex rel.* University of Kansas" as the defendant in this case.

[2] The ADA Amendments Act of 2008 ("ADAAA") amended the ADA and "went into effect on January 1, 2009." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1303 n.1 (10th Cir. 2017). Here, the "events that form the basis for [plaintiff's] disability-related claims occurred after this date; therefore, the ADAAA is technically applicable here." *Id.* The "ADAAA primarily effected revisions to the ADA's definition of 'disability.'" *Id.* Because plaintiff's disability status isn't relevant to any issue decided here, the court "freely rel[ies] on authorities [existing] prior to ADAAA's effective date that apply and construe the ADA, insofar as they are relevant." *Id.* For simplicity, the court refers to the governing law as the ADA. *See Jacobs v. Salt Lake City Sch. Dist.*, 154 F.4th 790, 795 (10th Cir. 2025) (referring to the governing law as the "ADA," not the "ADAAA").

invokes Eleventh Amendment immunity and sovereign immunity and asks the court to dismiss plaintiff's claims arising under the ADA.  It also asks the court to dismiss plaintiff's claims for emotional damages.  This Order grants in part and denies in part defendant's Motion for Judgment on the Pleadings (Doc. 35), for reasons explained, below.

**I.     Background**

The court already explained the allegations in the Complaint in an earlier Order.  Doc. 23 at 2–6; *Dehn v. Bd. of Regents Kan. Colls. & Univs. ex rel. Univ. of Kan. Med. Ctr.*, No. 24-2079-DDC-GEB, 2025 WL 266647, at *1–3 (D. Kan. Jan. 22, 2025).  So, the court offers just an abbreviated version of those facts here.

Plaintiff is a student in defendant's Nurse-Midwife Doctor of Nursing Practice program. Doc. 1 at 4 (Compl. ¶ 13).  She alleges that defendant unlawfully discriminated against her based on disability by failing to provide her reasonable accommodations, failing to honor a settlement agreement she had reached with defendant, subjecting her to harsh grading, and delaying her ability to graduate by inserting additional course requirements.  *Id.* at 20–21 (Compl. ¶ 119). She also alleges that defendant unlawfully retaliated against her for requesting accommodations. *Id.* at 24–25 (Compl. ¶ 136).  Plaintiff originally asserted three claims:  one based on disability discrimination under § 504 of the Rehabilitation Act and the ADA; one based on retaliation under the same statutes; and one for breach of contract.  Earlier in this litigation, defendant moved to dismiss the Complaint.  Doc. 11.  The court granted that motion in part and denied it in part, dismissing plaintiff's breach-of-contract claim but permitting her discrimination and retaliation claims to survive.  Doc. 23 at 20.

Now, defendant challenges those surviving claims under Rule 12(c).  The court recites the legal standard for a Rule 12(c) motion below.  But first, the court identifies a wrinkle. Defendant's immunity arguments bear on the court's subject matter jurisdiction.  *See Williams v.*

*Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019) ("Once effectively asserted, Eleventh Amendment immunity constitutes a bar to the exercise of federal subject matter jurisdiction." (quotation cleaned up)).  So, a different standard governs that portion of defendant's motion.  5C *Wright & Miller's Federal Practice & Procedure* § 1367 (3d ed. 2025 Update) ("[I]f a party raises an issue" about "subject matter jurisdiction on a motion for a judgment on the pleadings, the district judge will treat the motion as if it had been brought under Rule 12(b)(1).").  The court thus outlines, first, the legal standard for a Rule 12(c) motion for failure to state a cognizable claim, and then identifies the legal standard for a Rule 12(c) motion for lack of subject matter jurisdiction.

II.     **Legal Standard**

Courts evaluate a Rule 12(c) motion using the same standard used to evaluate a motion to dismiss under Rule 12(b)(6).  *Sanchez v. U.S. Dep't of Energy*, 870 F.3d 1185, 1199 (10th Cir. 2017).  The court can grant a motion for judgment on the pleadings only when the factual allegations in the complaint fail "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

"Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'" *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (emphasis in original) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)). And while the court must assume that the complaint's factual allegations are true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 1263 (quoting *Iqbal*, 556 U.S. at 678). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

For the portion of defendant's motion asserting Eleventh Amendment immunity, Rule 12(b)(1) governs. 5C *Wright & Miller's Federal Practice & Procedure* § 1367. Under Rule 12(b)(1), a defendant may move the court to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). The party invoking federal jurisdiction—here, the plaintiff—bears the burden to prove it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018) (presuming "no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction").

Rule 12(b)(1) motions take one of two forms: a facial attack or a factual attack. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). "A facial attack asserts that the

allegations in the complaint, even if true, are insufficient to establish subject matter jurisdiction. By contrast, a factual attack on the complaint challenges the veracity of the allegations upon which subject matter jurisdiction depends." *Cnty. Comm'rs v. U.S. Dep't of the Interior*, 614 F. Supp. 3d 944, 951 (D.N.M. 2022) (quotation cleaned up). Here, defendant makes a facial attack on jurisdiction. So, the court assumes the allegations in the Complaint are true.

### III.     Analysis

Defendant advances two dismissal arguments. One relies on Eleventh Amendment immunity and sovereign immunity. The second attacks the viability of plaintiff's claim to recover emotional damages. The court tackles these issues in turn, starting with the immunity arguments.

#### A.     Eleventh Amendment and Sovereign Immunity

Defendant first argues that Eleventh Amendment immunity and sovereign immunity bar plaintiff's ADA claims. Doc. 36 at 4–10.[3] As the court already has explained, these arguments implicate the court's subject matter jurisdiction. *Williams*, 928 F.3d at 1212. The court thus applies the 12(b)(1) standard to defendant's facial subject-matter-jurisdiction attack, assuming the facts alleged in the Complaint are true. Before assessing the substance of defendant's immunity arguments, the court first takes up plaintiff's constitutional avoidance argument.

##### 1.     **Constitutional Avoidance**

Plaintiff first argues that the court needn't undertake this immunity analysis at all. Doc. 38 at 3–4. As plaintiff explains it, her claims under the ADA and § 504 essentially are identical.

---

[3] Defendant hasn't moved to dismiss plaintiff's § 504 claims based on sovereign immunity or Eleventh Amendment immunity. *See generally* Doc. 36. This decision makes good sense. The Rehabilitation Act contains a waiver provision, which requires "states who accept federal funds to waive their sovereign immunity for claims under the Rehabilitation Act" and a handful of other statutes. *Levy v. Kan. Dep't of Social & Rehabilitation Servs.*, 789 F.3d 1164, 1167 (10th Cir. 2015). This waiver provision doesn't apply to ADA claims. *Id.* at 1171.

*Id.* Thus, under the doctrine of constitutional avoidance, the court needn't, and shouldn't, tackle complex constitutional questions. The court is unpersuaded.

"Federal courts avoid unnecessary adjudication of constitutional issues." *Bandimere v. SEC*, 844 F.3d 1168, 1171 (10th Cir. 2016). A "'longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.'" *Camreta v. Greene*, 563 U.S. 692, 705 (2011) (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988)); *see also Matal v. Tam*, 582 U.S. 218, 230–31 (2017) (explaining that the Supreme Court has "often stressed that it is important to avoid the premature adjudication of constitutional questions and that" courts "ought not to pass on questions of constitutionality unless such adjudication is unavoidable" (quotation cleaned up)). Here, the court concludes, this constitutional avoidance doctrine doesn't permit the court to bypass defendant's immunity arguments. That's so because "the sole argument" defendant advances has constitutional undertones. *Bandimere*, 844 F.3d at 1172.

Plaintiff argues that the same standards govern claims arising under the ADA and § 504. Doc. 38 at 4 (citing *Hamer v. City of Trinidad*, 924 F.3d 1093, 1099 (10th Cir. 2019)). And so, plaintiff explains, defendant's immunity arguments don't implicate plaintiff's § 504 claims. Thus, the court has no reason to assess defendant's immunity arguments. This is just wrong.

As a starting point, to the extent plaintiff's claims are redundant, it cuts against plaintiff—not defendant. That is, "'courts have dismissed claims pursuant to Fed. R. Civ. Pro. 12(b)(6) when those claims are duplicative of other claims in the suit.'" *Doe ex rel. Doe v. Brighton Sch. Dist.*, 612 F. Supp. 3d 1205, 1218 (D. Colo. 2020) (quoting *Sw. Re, Inc. v. G.B. Invs. Reinsurance Co., Ltd.*, No. CIV 10-856 BB/WPL, 2011 WL 13114921, at *1 (D.N.M. June 17, 2011) (collecting cases)); *see also* Fed. R. Civ. P. 12(f) (authorizing the court to strike any

6

"redundant" matter on its own motion). So, were plaintiff's ADA and § 504 claims identical, the court would strike the ADA claim—not defer ruling on defendant's immunity arguments.

But the two claims aren't identical. The Tenth Circuit recently has clarified that different causation standards govern claims under the ADA and claims under § 504. *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1313 (10th Cir. 2021). In *Crane*, the Circuit recognized some tension in its caselaw about the causation standard for ADA claims. It resolved that tension by "holding the ADA merely requires the plaintiff's disability be a but-for cause (i.e., 'by reason of') of the discrimination, rather than—as the Rehabilitation Act requires—its sole cause (i.e., 'solely by reason of')." *Id.* Plaintiff's claims aren't the same and thus aren't redundant. And the court has no reason to defer ruling on defendant's immunity arguments. *See Guttman v. New Mexico*, 325 F. App'x 687, 691 (10th Cir. 2009) ("Immunity from suit is an attribute of every state's sovereignty, and once asserted should be addressed promptly.").

The court tackles the substance of these immunity arguments, next.

### 2.      Immunity Analysis

"The Eleventh Amendment bars suits in federal court against a nonconsenting state brought by the state's own citizens." *Williams*, 928 F.3d at 1212. "This immunity extends to arms of the state and to state officials who are sued for damages in their official capacity." *Id.* Where properly raised, Eleventh Amendment immunity deprives the court of subject matter jurisdiction. *Id.* ("Once effectively asserted, Eleventh Amendment immunity constitutes a bar to the exercise of federal subject matter jurisdiction." (quotation cleaned up)). There "'are three exceptions to the Eleventh Amendment's guarantee of sovereign immunity to states.'" *Frank v. Lee*, 84 F.4th 1119, 1130–31 (10th Cir. 2023) (quoting *Levy*, 789 F.3d at 1168).

> "First, a state may consent to suit in federal court. Second, Congress may abrogate a state's sovereign immunity by appropriate legislation when it acts under Section 5 of the Fourteenth Amendment. Finally, under *Ex parte Young*, a plaintiff may

7

>bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief."

*Id.* (quotation cleaned up) (quoting *Levy*, 789 F.3d at 1169).  Here, defendant is an "arm[] of the State of Kansas." *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1195 (10th Cir. 1998).  Plaintiff never argues otherwise.  Eleventh Amendment immunity thus bars plaintiff's ADA claims, unless one of the three exceptions applies.[4]

Plaintiff here only invokes the second of these exceptions—Congressional abrogation.  The "Supreme Court has held Congress may abrogate state sovereign immunity if Congress (1) unequivocally indicates its intent to abrogate state sovereign immunity, and (2) acts pursuant to a valid grant of constitutional authority under § 5." *Guttman v. Khalsa*, 669 F.3d 1101, 1117 (10th Cir. 2012).  And, as the Tenth Circuit has explained, "there is no question Congress intended Title II to abrogate state sovereign immunity." *Id.*; *see also* 42 U.S.C. § 12202.  As the Circuit explained, the "ADA specifically provides: 'A state shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter.'" *Guttman*, 669 F.3d at 1117 (quoting 42 U.S.C. § 12202).  This principle still leaves a second question: "whether Congress's intent to abrogate state sovereign immunity is a valid exercise of its enforcement power under § 5" of the Fourteenth Amendment.  *Id.*  The parties agree.  The three-part test articulated in *United States v. Georgia*, 546 U.S. 151 (2006), governs this inquiry.

---

[4] "Eleventh Amendment immunity is a subset of a state's inherent sovereign immunity." *Abrogast v. Kan. Dep't of Labor*, 789 F.3d 1174, 1181 n.3 (10th Cir. 2015).  "State sovereign immunity protects states from suit and damages in their own courts; the Eleventh Amendment extends such sovereign immunity to the states for actions initiated against them by citizens in federal court." *Id.*  As defendant acknowledges, the same inquiry—whether congress has abrogated defendant's immunity—applies to defendant's assertion of both immunities here.  Doc. 39 at 2 n.5.  The court thus analyzes the two immunities simultaneously.

Under the *Georgia* framework, the court, *first*, must determine on a claim-by-claim basis "'which aspects of the State's alleged conduct violated Title II.'" *Brooks v. Colo. Dep't of Corr.*, 12 F.4th 1160, 1168 (10th Cir. 2021) (quoting *Georgia*, 546 U.S. at 159). *Second*, if the court "concludes that some aspects of a state's [alleged] conduct violated Title II, it should then move on to determine whether that conduct violated the Fourteenth Amendment." *Id.* If the alleged conduct violated both the ADA and the Fourteenth Amendment, Congress's abrogation of the state's Eleventh Amendment immunity is constitutionally valid. *Id.* If the alleged conduct violated the ADA but not the Fourteenth Amendment, the court must proceed to step three. *Id.* At this final step the court must decide the following question: "'whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.'" *Id.* (quoting *Georgia*, 546 U.S. at 159). The court now applies the *Georgia* framework to this case.

### a.     Step One:  ADA Violation

Step one—whether plaintiff has alleged a violation of Title II of the ADA—is easy. The Complaint alleges that defendant discriminated against her because of her disability by failing to accommodate her and ignoring her pleas for assistance. It also alleges that defendant violated the ADA by retaliating against plaintiff after she complained of discrimination. Indeed, defendant doesn't challenge whether plaintiff's Complaint alleges a violation of the ADA. *See generally* Doc. 36. This concession ends step one. *See Guttman*, 669 F.3d at 1113 (explaining that step one was "easy" where the parties "stipulated that [plaintiff] stated a claim under Title II"). The court takes up step two, next.

### b.     Step Two:  Fourteenth Amendment Violation

Step two asks whether the Complaint's allegations of misconduct also amount to Fourteenth Amendment violations. *Id.* at 1113 (citing *Georgia*, 546 U.S. at 159). Plaintiff argues that defendant has violated her procedural and substantive due process rights under the

9

Fourteenth Amendment by precluding her from completing her nursing degree. Doc. 38 at 5–6. Our Circuit has explained "that university students have a property interest in their continued education." *Yeasin v. Durham*, 719 F. App'x 844, 852 (10th Cir. 2018) (citing *Harris v. Blake*, 798 F.2d 419, 424 (10th Cir. 1986)); *see also Gossett v. Okla. ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1181 (10th Cir. 2001) ("[W]e note that [plaintiff] had a property interest in his place in the Nursing School program that is entitled to due process protection under the Constitution."). Both procedural and substantive due process protect this property interest. *See Gossett*, 245 F.3d at 1181 (explaining that when a state involuntarily terminates a student's enrollment, "the procedural requirements of the Due Process Clause are satisfied if the student is given prior notice of the deficiencies in his academic performance and if the challenged decision is careful and deliberate" (quotation cleaned up)); *id.* at 1182 ("Under Supreme Court authority, a plaintiff asserting a substantive due process claim based on an academic decision must show that the decision was the product of arbitrary state action rather than a conscientious, careful and deliberate exercise of professional judgment."); *see also Harris*, 798 F.2d at 422–25 (discussing procedural and substantive due process in context of compelled withdrawal). In other words, to abide the Due Process Clause when terminating a student's enrollment, a state university must afford the student reasonable process and mustn't terminate her enrollment for arbitrary or irrational reasons.

Seizing on this case law, plaintiff asserts that defendant violated her procedural and substantive due process rights by preventing her from graduating. Doc. 38 at 6. The issue? The Complaint never alleges that defendant terminated plaintiff's enrollment. The Complaint culminates in an allegation that defendant further delayed plaintiff's graduation and piled on additional requirements for plaintiff to graduate. *See* Doc. 1 at 18 (Compl. ¶ 107). But plaintiff

never alleges that defendant involuntarily terminated her education.  The absence of that allegation distinguishes this case from every case where our Circuit has found—or even discussed—a substantive- or procedural-due-process claim in the context of a plaintiff's property interest in continued education.  *See, e.g.*, *Yeasin*, 719 F. App'x at 852–53 (expulsion); *Gossett*, 245 F.3d at 1181–82 (involuntary dismissal); *Harris*, 798 F.2d at 421–23 (compelled withdrawal).  The court thus rejects plaintiff's theory.  The Complaint hasn't alleged a Fourteenth Amendment violation based on defendant terminating plaintiff's enrollment because the Complaint never alleges such action.

The court declines to consider whether other allegations in the Complaint might support an inference that defendant actually violated the Fourteenth Amendment.  The court couldn't locate any binding case law suggesting that graduate students have a constitutionally protected interest in receiving disability accommodations.  *See McCulley v. Univ. of Kan. Sch. of Med.*, No. 12–2587–JTM, 2013 WL 1501994, at *2 (D. Kan. Apr. 10, 2013) (compiling cases) ("Court[s] have generally rejected claims for accommodation resting on Equal Protection Clause grounds.").  But even if such case law existed, the court "will not craft a party's arguments for [her]."  *Perry v. Woodward*, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999); *see also Saqr v. Univ. of Cincinnati*, No. 18-cv-542, 2019 WL 699347, at *4 n.5 (S.D. Ohio Feb. 20, 2019) (declining to find constitutional violation at step two where plaintiff failed to "point to specific allegations or provide any explanation for construing the allegations as stating a Fourteenth Amendment claim"), *report and recommendation adopted*, 2019 WL 1200802 (S.D. Ohio Mar. 14, 2019).  The "onus is on [plaintiff] to demonstrate that [defendant's] assertion of Eleventh Amendment sovereign immunity does not bar [her] Title II claim."  *Havens v. Colo. Dep't of Corr.*, 897 F.3d 1250, 1260 (10th Cir. 2018).  And the Complaint doesn't fit the sole theory that plaintiff has

11

briefed. In short, on the briefing submitted here, the court concludes plaintiff hasn't alleged that defendant's purported ADA violations also violated the Fourteenth Amendment. *See Shaikh v. Tex. A&M Univ. Coll. of Med.*, 739 F. App'x 215, 224–25 (5th Cir. 2018) (affirming 12(b)(1) dismissal of plaintiff's ADA claim where plaintiff "fail[ed] to demonstrate that [defendant's] actions ran afoul of the Due Process Clause" when plaintiff withdrew from school and defendant denied readmission). This conclusion requires the court to progress to step three—whether Congress's abrogation of sovereign immunity for defendant's alleged misconduct is nonetheless valid. *See Georgia*, 546 U.S. at 159.

### c.  Step Three: Waiver of Sovereign Immunity

"Under the Fourteenth Amendment, a state may be subject to a statutory suit under Title II of the ADA, even if there is no allegation of an actual Fourteenth Amendment violation." *Guttman*, 669 F.3d at 1116 (citing *Tennessee v. Lane*, 541 U.S. 509, 523 (2004)). That's so because "Congress's power to enact remedial legislation under § 5 of the Fourteenth Amendment is broad." *Id.* Congress's power to enforce the Fourteenth Amendment "includes the authority both to remedy and to deter violation of rights guaranteed thereunder by prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 81 (2000).

To determine "whether Congress's intent to abrogate state sovereign immunity is a valid exercise of its enforcement power under § 5[,]" courts consider three items outlined in *City of Boerne v. Flores*, 521 U.S. 507 (1997). *Guttman*, 669 F.3d at 1117. These items are:

> (1) the nature of the constitutional right at issue; (2) the extent to which Congress's remedial statute was passed in response to a documented history of relevant constitutional violations; and (3) whether the congressional statute is "congruent and proportional" to the specific class of violations at issue, given the nature of the relevant constitutional right and the identified history of violations.

*Id.* (citing and quoting *City of Boerne*, 521 U.S. at 529–36).  The court undertakes this analysis on a "case-by-case basis—with respect to the particular governmental services at issue in the case."  *Id.* (quotation cleaned up).

                **i.**        **Scope of the Constitutional Right**

"Under the first element of the *City of Boerne* analysis," the court "determine[s] the nature of the constitutional right at issue and the related class of state action."  *Id.* at 1118.  The right placed in issue here is the right of disabled persons to remain free from irrational discrimination based on their disabilities in postgraduate education.  *See Toledo v. Sanchez*, 454 F.3d 24, 36 (1st Cir. 2006) ("The Supreme Court's Equal Protection Clause and Due Process Clause jurisprudence places a special emphasis on the constitutional rights implicated by discrimination in public education, and Title II seeks to enforce those rights by prohibiting discrimination against the disabled and providing for accommodations of their special needs.").  This right "does not invoke heightened scrutiny."  *Guttman*, 669 F.3d at 1118 (explaining that "a state's decision to treat the disabled differently than others cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose."); *see also Plyler v. Doe*, 457 U.S. 202, 221 (1982) ("[E]ducation is not a 'right' granted to individuals by the Constitution.").

                **ii.**        **Historical Record of Constitutional Violations**

The court next considers "the extent to which Title II was 'responsive to, or designed to prevent, unconstitutional behavior.'"  *Guttman*, 669 F.3d at 1118 (quoting *City of Boerne*, 521 U.S. at 532).  Plaintiff largely relies on *Toledo v. Sanchez*, 454 F.3d 24, to support her argument that Congress passed the ADA to prohibit "irrational discrimination in public education at all levels[.]"  Doc. 38 at 12.  True, *Toledo* concluded that "the thirty years preceding the enactment

13

of the ADA evidence a widespread pattern of states unconstitutionally excluding disabled children from public education and irrationally discriminating against disabled students within schools." 454 F.3d at 38–39. But *Toledo* involved an undergraduate student. *See id.* at 30. And our court and others have "draw[n] the abrogation-of-immunity line at Title II claims alleging discrimination at the post-graduate level." *Saqr*, 2019 WL 699347, at *8 (collecting cases). Drawing this line at the postgraduate level makes good sense. As our court has explained, "discrimination at the post-graduate level" isn't like discrimination at lower levels of education because it isn't "fundamental to other civic activities such as voting." *McCulley*, 2013 WL 1501994, at *2. Plaintiff here has failed to marshal a "showing of any Congressional findings of historical discrimination in medical schools[.]" *Id.* at *3. Nor has plaintiff pleaded any facts capable of supporting a finding of historical discrimination in graduate nurse-midwife programs. Based on this record, the court concludes, Congress didn't enact Title II as a response to a historical pattern of discrimination in postgraduate schools.

### iii. Congruent and Proportional Response

For the "third prong, the question is whether Title II is congruent and proportional to the specific class of violations at issue, given the nature of the relevant constitutional right and the identified history of violations." *Guttman*, 669 F.3d at 1119–20. This "inquiry is a targeted one." *Id.* at 1120.[5]

Our court already has resolved this inquiry in defendant's favor. *See McCulley*, 2013 WL 1501994, at *3. In *McCulley*, the plaintiff brought a Title II claim when the University of

---

[5] Plaintiff asserts that defendant hasn't made any arguments about the third step of the *Georgia* test. Doc. 38 at 7. She's mistaken. Defendant plainly and explicitly argues that plaintiff failed "to indicate that Congress abrogated [defendant's] immunity from her claims via a valid grant of constitutional authority." Doc. 36 at 8.

Kansas School of Medicine refused to admit her or accommodate her after learning about her spinal muscular atrophy. *Id.* at *1. United States District Judge J. Thomas Marten concluded that defendant had Eleventh Amendment immunity from plaintiff's claims. *Id.* at *1–3. He explained that plaintiff there had failed to show that Title II was "proportional, congruent, or responsive to historical unconstitutional behavior" for plaintiff's claim. *Id.* at *3. Significant to this conclusion was a complete absence of "any Congressional findings of historical discrimination in medical schools[.]" *Id.* The court finds this analysis persuasive.

Plaintiff contends that *McCulley*'s "narrow approach to defining the relevant right" wasn't faithful to *Guttman*. Doc. 38 at 10. The court disagrees with plaintiff's reading of Circuit precedent. *Guttman* considered—and rejected—a broad approach like the one plaintiff advocates. In *Guttman*, New Mexico revoked the medical license of a physician who had "a history of depression and post-traumatic stress disorder." 669 F.3d at 1106–07. The physician sued the state board of medical examiners, asserting claims under Title II of the ADA. *Id.* at 1107. The state asserted Eleventh Amendment immunity. When deciding the congruent-and-proportional inquiry, the Tenth Circuit considered whether it should weigh "Congress's enforcement power . . . only in relation to Congress's authority to remedy discrimination in the area of *professional* licensing[,]" or whether it should evaluate Congress's enforcement power "as it applies to the expansive category of *public* licensing." *Id.* at 1120 (emphases in original) (internal quotation marks omitted). The Circuit explained that the "narrower focus comports with the approach" the Supreme Court took in *Lane*—where it had "zeroed in" on discrimination in "buildings that contain judicial functions" instead of considering "all disability discrimination or even all state-owned buildings[.]" *Id.* The Circuit also explained another basis for this conclusion:

15

> If we were to instead focus on the general category of *public* licensing, we would need to address a heterogeneous set of state action—everything from regulating the fundamental right of marriage to the decidedly non-fundamental rights to fish or cut hair—so as to distract the inquiry from Congress's § 5 enforcement authority, which is proportional to the importance of the right asserted.

*Id.* (emphasis in original).

The same logic applies here. A broad focus on Congress's power to remedy discrimination at all levels of public education—including post-graduate public education—would require the court to assess "a heterogenous set of state action[.]" *Id.* The Supreme Court has "repeatedly acknowledged the overriding importance of preparing students for work and citizenship, describing education as pivotal to 'sustaining our political and cultural heritage' with a fundamental role in maintaining the fabric of society." *Grutter v. Bollinger*, 539 U.S. 306, 331 (2003) (quoting *Plyler*, 457 U.S. at 221).[6] And Circuit courts likewise have recognized that discrimination in education against disabled people might impede their ability to access and exercise other fundamental rights. *See Ass'n for Disabled Ams. v. Fla. Int'l Univ.*, 405 F.3d 954, 959 (11th Cir. 2005) ("Discrimination against disabled students in education affects disabled persons' future ability to exercise and participate in the most basic rights and responsibilities of

---

[6] Plaintiff's brief includes this passage:

> Like the issue of physical access in *Lane*, which was not a constitutional right itself but rather implicated other fundamental rights, education is similarly a pathway to exercising one's fundamental rights and has been described at any level as vital and foundational, necessary to enable individuals to "earn an adequate livelihood, to enjoy life to the fullest, or to fulfill as completely as possible the duties and responsibilities of good citizens." *See Brown v. Bd. of Ed. of Topeka, Shawnee Cty., Kan.*, 347 U.S. 483, 493-495 (1954), *supplemented sub nom. Brown v. Bd. of Educ. of Topeka, Kan.*, 349 U.S. 294 (1955) (addressing the role of "public education" generally, including at the university level, and harm of exclusion at all levels, in reaching its holding).

Doc. 38 at 12. The court carefully has reviewed *Brown v. Board of Education*, 347 U.S. 483 (1954). This landmark case doesn't contain the quotation plaintiff attributes to it. The quotation plaintiff has quoted appears to originate from *Dixon v. Alabama State Board of Education*, 294 F.2d 150, 157 (5th Cir. 1961).

16

citizenship, such as voting and participation in public programs and services."). But postgraduate education doesn't serve as a gateway to other rights in the same way that primary and secondary education do. *See McCulley*, 2013 WL 1501994, at *2. That is, postgraduate education isn't "fundamental to other civic activities such as voting." *Id.* People don't pursue postgraduate education "to exercise and participate in the most basic rights and responsibilities of citizenship[.]" *Ass'n for Disabled Ams.*, 405 F.3d at 959. So, consistent with our court's past approach to the issue, the court considers Congress's power to remedy discrimination in the field of postgraduate public education—not public education generally.[7]

The court thus asks "only whether Title II is congruent and proportional in the context of the class of cases implicating disability discrimination" in postgraduate education. *Guttman*, 669 F.3d at 1120. It's not. "Whether a remedial provision is an appropriate response (i.e., congruent and proportional) to a purported class of constitutional violations depends on how well-tailored the congressional remedy is to the nature of the right and the history of violations." *Id.* at 1122. And here, plaintiff hasn't pleaded facts of "any Congressional findings of historical

---

[7] Footnoted dicta in *Guttman* uses language which, arguably, might support the opposite conclusion. *See* 669 F.3d at 1120 n.3 (noting that "government conduct at all levels of public education . . . is supported by a well-identified history of disability discrimination that is common to all levels of public education" (quotation cleaned up)). But as the court has explained, plaintiff has failed to plead facts capable of supporting a finding that the "well-identified history of discrimination" extends to discrimination in postgraduate educational institutions.

Separately, our Circuit observed in the Title II context that "there is a trend of courts holding that, absent the need to vindicate a fundamental right or protect a suspect class, Congress may not abrogate state sovereign immunity." *Id.* at 1122 (compiling cases). Then, in a footnote, *Guttman* observed that "discrimination in public education" is an exception to this trend. *Id.* at 1123 n.4. "Several circuit courts have found Title II validly abrogates state sovereign immunity in this context, even though education does not involve a fundamental right." *Id.* "In reaching this conclusion, these courts have been persuaded by (1) the persistent pattern of exclusion and irrational treatment of disabled students in public education, (2) the gravity of the harm worked by such discrimination, and (3) the limited nature of the compliance costs imposed on states." *Id.* As the court already has explained, these points don't apply with the same force to postgraduate education. So, the court isn't persuaded that *Guttman*'s footnotes—which plaintiff never cites or discusses—help resolve the issue here.

17

discrimination in medical schools" or other postgraduate education. *McCulley*, 2013 WL 1501994, at *3; *see also Lane*, 541 U.S. at 521 (recounting that the Supreme Court has struck down Congress's attempts to abrogate state sovereign immunity where the "exercise of its prophylactic § 5 power was unsupported by a relevant history and pattern of constitutional violations"). The court thus concludes that Congress's abrogation of state sovereign immunity to remedy disability discrimination in postgraduate education isn't proportional and congruent given the "nature of the right and the history of violations." *Guttman*, 669 F.3d at 1122.

The persuasive weight of authority also supports this conclusion. Those courts who have considered whether Congress's § 5 power permits it to abrogate state sovereign immunity for disability discrimination in postgraduate education largely have answered "no." *See, e.g.*, *McCulley*, 2013 WL 1501994, at *3; *Doe v. Bd. of Trs. of Univ. of Ill.*, 429 F. Supp. 2d 930, 939 (N.D. Ill. 2006) (concluding that "Title II, as applied to the postgraduate state university at issue in this case, exceeds Congress's power under section five"); *Saqr*, 2019 WL 699347, at *9 ("Consistent with the claim-by-claim approach required by both *Lane* and *Georgia*, and the analysis of several district courts that have addressed the issue, I conclude that the abrogation of immunity is not valid for Plaintiffs' Title II ADA claims of denial of access to medical school."); *Rittenhouse v. Bd. of Trs. Of S. Ill. Univ.*, 628 F. Supp. 2d 887, 864–95 (S.D. Ill. 2008) (finding defendant immune from law student's Title II suit). Consistent with these decisions, the court holds that Congress lacks power to abrogate defendant's Eleventh Amendment and sovereign immunity on the facts presented in this case.[8]

---

[8] By no means is this a unanimous position, and the court doesn't suggest it is. Several courts—including the Fourth Circuit and one district court in our Circuit—have found that Congress validly abrogated state sovereign immunity for disability discrimination in postgraduate education. *See Saqr*, 2019 WL 699347, at *6–11 (discussing these cases but finding them unpersuasive); *see also Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 484–91 (4th Cir 2005); *Cunningham v. Univ. of N.M.*, 779 F. Supp. 2d 1273, 1278–80 (D.N.M. 2011). But those courts "did not address whether

### 3. Conclusion – Eleventh Amendment Immunity

Plaintiff hasn't shouldered her burden to show that Title II is a congruent and proportional Congressional response "given the nature of the relevant constitutional right and the identified history of violations." *Guttman*, 669 F.3d at 1119–20. The court thus dismisses plaintiff's ADA claims because defendant's Eleventh Amendment and sovereign immunity bars those claims. Defendant asks the court to dismiss these claims with prejudice. Doc. 36 at 5, 10, 12; Doc. 39 at 6. But Circuit precedent requires precisely the opposite. Dismissals based on Eleventh Amendment immunity are without prejudice. *Colby v. Herrick*, 849 F.3d 1273, 1278 (10th Cir. 2017). The same rule applies to dismissals based on sovereign immunity. *Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1 v. City of Guthrie*, 654 F.3d 1058, 1069 n.9 (10th Cir. 2011). The court thus denies the aspect of defendant's motion aspiring to dismiss plaintiff's ADA claims with prejudice. Instead, the court dismisses those claims without prejudice.

### B. Emotional Damages

Finally, defendant asks the court to dismiss plaintiff's request for emotional distress damages for her Rehabilitation Act claims. Doc. 36 at 10–11.[9] The Supreme Court recently has clarified that "emotional distress damages are not recoverable" under the Rehabilitation Act. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 230 (2022). And plaintiff, to her credit, concedes this point and "voluntarily dismisses her claims for emotional distress

---

access to professional school warrants different treatment" than access to lower education. *Saqr*, 2019 WL 699347, at *8. Also, *Constantine* was a pre-*Georgia* decision, and our Circuit has suggested that *Constantine* inappropriately skipped the first two *City of Boerne* steps. *Guttman*, 669 F.3d at 1117. "Since *Georgia* was decided in 2006, no Circuit court has squarely addressed" this sovereign immunity inquiry "in the professional graduate school context[.]" *Saqr*, 2019 WL 699347, at *9. The court finds the courts drawing "the abrogation-of-immunity line at Title II claims alleging discrimination at the post-graduate level" persuasive. *Id.* at *8.

[9] Defendant also asks the court to dismiss plaintiff's request for emotional damages for her ADA claims. Because the court dismisses plaintiff's ADA claims, it needn't consider this sub-argument.

19

damages." Doc. 38 at 1.  The court appreciates the concession as it streamlines the case in favor of triable claims.  It thus grants defendant's request and dismisses with prejudice plaintiff's claims for emotional distress damages.

## IV.      Conclusion

Defendant enjoys Eleventh Amendment and sovereign immunity against plaintiff's ADA claims.  The court thus lacks jurisdiction over those claims.  But the court denies defendant's request to dismiss those claims with prejudice because Circuit precedent doesn't allow it.  Instead, the court dismisses those claims without prejudice.  The parties agree that emotional damages aren't available for plaintiff's § 504 claims.  So, the court dismisses plaintiff's claims for emotional damages with prejudice.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Board of Regents for Kansas Colleges and Universities *ex rel.* University of Kansas's Motion for Judgment on the Pleadings (Doc. 35) is granted in part and denied in part, as explained in full by this Order.

**IT IS FURTHER ORDERED THAT** the Clerk update the docket to list "Board of Regents for Kansas Colleges and Universities, States of Kansas *ex rel.* University of Kansas" as the defendant in this case.

**IT IS SO ORDERED.**

**Dated this 21st day of November, 2025, at Kansas City, Kansas.**

                                        **s/ Daniel D. Crabtree**
                                        **Daniel D. Crabtree**
                                        **United States District Judge**